IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

EDNA M. ANAYA,

    Plaintiff,

vs.                                                                                                                                                              No.  12-cv-0415 SMV

CAROLYN COLVIN,[1]
Acting Comm'r of SSA,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION TO REVERSE AND REMAND**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum [Doc. 18] ("MRR"), filed on August 20, 2012. The Commissioner responded on October 15, 2012. [Doc. 20]. Plaintiff replied on November 12, 2012. [Doc. 21]. The parties consented to the undersigned's conducting proceedings and entering final judgment in this case. [Doc. 11]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court FINDS that the Administrative Law Judge ("ALJ") failed to make the required, specific findings on the level of vocational adjustment that Plaintiff would have to make in order to perform other jobs. Accordingly, the MRR is well-taken and should be granted.

**I.**     **Procedural Background**

Plaintiff applied for a period of disability and disability insurance benefits on March 5, 2009. Tr. 11. Plaintiff alleged a disability onset date of January 1, 2004, and she met the insured

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security and will, therefore, be substituted for Commissioner Michael J. Astrue as Defendant in this action. *See* Fed. R. Civ. P. 25(d)(1) (permitting such substitutions).

status requirements of the Social Security Act through December 31, 2008.  Tr. 11.  Accordingly, Plaintiff had to establish that she was disabled on or before December 31, 2008.  *See id.*  Her claim was denied initially and on reconsideration.  *Id.*  On February 22, 2010, Plaintiff requested a hearing before an ALJ.  A hearing was held via video conference on October 20, 2010, before ALJ Barry Robinson.  *Id.*  Plaintiff appeared in Santa Fe, New Mexico, and the ALJ presided from Albuquerque, New Mexico.  Tr. 11, 27–31.  The ALJ took testimony from Plaintiff and an impartial Vocational Expert ("VE") Cornelius Ford.  Tr. 11, 53–61.

The ALJ issued his unfavorable decision on December 23, 2010.  Tr. 11–22.  He found that Plaintiff suffered from severe degenerative joint disease/arthritis of the knees, obstructive sleep apnea, and obesity.  Tr. 13.  Next, the ALJ determined that, through her date last insured, Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that she could only occasionally climb ramps and stairs; could never climb ropes, scaffolds, and ladders; and could occasionally balance, stoop, crouch, kneel, and crawl.  Tr. 16.  As a result, the ALJ determined that Plaintiff was not able to return to her past relevant work.  Tr. 20.  However, considering Plaintiff's age (58 years on her date last insured), education, work experience, and RFC, he found that she had transferrable work skills and, therefore, could perform the jobs of switchboard operator, check casher, and clerical sorter.  Tr. 21.  Therefore, the ALJ determined that Plaintiff was not disabled at the relevant time, and he denied her claim.  *Id.*

## II.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied.  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).  Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While a court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III.     Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 405.1505(a).

When considering a disability application, the Commissioner is required to use a five step sequential evaluation process. 20 C.F.R. §§ 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity;" and (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) either meet or equal one of the Listings of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her RFC, age, education, and work experience. *Id.*

## IV.   Analysis

Plaintiff moves to reverse the Commissioner's final decision because it was not supported by substantial evidence, because the Commissioner did not meet her burden at step five, and because the ALJ failed to apply the correct legal standards. [Doc. 18] at 1. She challenges the ALJ's determination of Plaintiff's RFC in various ways. *Id.* at 10–14. She also challenges his finding that she has transferrable skills and, thus, can perform other work. *Id.* at 15–20. Finally, she argues that the ALJ's failed to develop the record regarding her osteoarthritis. *Id.* at 21. The Commissioner responds that the final decision should be affirmed because it is supported by substantial evidence and the correct legal standards were used. *See* [Doc. 20].

### A.   Plaintiff's challenges to the RFC

First, Plaintiff complains that the ALJ erred in failing to apply certain factors outlined in *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987) in evaluating her credibility. *See* [Doc. 18] at 11. The Commissioner disputes the applicability of *Frey* to the ALJ's evaluation of Plaintiff's *credibility*. [Doc. 20] at 5. The Commissioner is correct. The *Frey* factors are necessary where the ALJ denies benefits because a claimant has refused to follow prescribed treatment, and presumably that treatment would have restored the claimant's ability to work, not where the ALJ considers treatment compliance as a method of evaluating the veracity of plaintiff's reported symptoms. *Qualls v. Apfel*, 206 F.3d 1368, 1372–73 (10th Cir. 2000). Moreover, treatment compliance is a legitimate consideration in evaluating the validity of an alleged impairment. *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996). The Court finds no error in the ALJ's failure to apply the *Frey* factors.

Plaintiff argues that the ALJ should have considered whether non-compliance with treatment resulted from her mental illness itself because, for example, Plaintiff's treating physician noted that "motivation" was a problem for Plaintiff.  [Doc. 18] at 11–12 (citing *Pate-Fires*, 564 F.3d 935 (8th Cir. 2009)).  The Commissioner argues that *Pate-Fires* is distinguishable because, there, the evidence of claimant's mental illness was extensive and pointed to a very severe illness, while here, Plaintiff had "a relatively minor treatment history." [Doc. 20] at 5–6.  Furthermore, the Commissioner points to *Sawyer v. Barnhart*, No. 03-7014, 89 F. App'x 148, 152 (10th Cir. Feb. 9, 2004) (unpublished), confirming that lack of mental health treatment may be used in the step-two analysis.  Plaintiff has not shown that the ALJ applied the wrong legal standards or otherwise committed reversible error when he failed to discuss whether Plaintiff's mental illness was responsible for her non-compliance with mental health treatment.

Next, Plaintiff argues that the "ALJ's reliance on [her] daily activities was error." [Doc. 18] at 12.  Plaintiff is correct that the "sporadic performance of activities or household tasks [does not constitute] substantial evidence that a claimant can work."  *Id.* at 12 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)).  But that does not mean that an ALJ can never rely on activities of daily living ("ADLs") for any reason at all.  In fact, in the context of making the step-two evaluation of mental impairments, the regulations *require* an ALJ to consider a claimant's ADLs.  20 C.F.R. § 404.1520a.  Here, the ALJ properly did just that.  To the extent that Plaintiff argues that there was evidence undercutting the ALJ's determination of mild limitations due to Plaintiff's mental impairments, the argument is unavailing because the

Court may not reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Flaherty*, 515 F.3d at 1070.

Further, Plaintiff seems to argue that the ALJ should have recontacted her treating physician rather than relying on the non-examining agency physicians' opinions regarding her work restrictions. [Doc. 18] at 14 (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)). Plaintiff, however, misses the mark. *Robinson* explains that an ALJ must recontact a treating source if the record is inadequate to make a determination, or where there is a conflict or ambiguity that must be resolved. *Robinson*, 366 F.3d at 1084. Here, the ALJ did not find that there was any inadequacy, conflict, or ambiguity. *See* Tr. 19. Instead, he found that "the record shows no restrictions imposed on [Plaintiff] by her treating physician. Given [Plaintiff]'s allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on her by her treating doctor." *Id.* In other words, the ALJ found that the absence of any restrictions undercut Plaintiff's allegations. *See id.* The ALJ was not required to recontact the treating physician because he did not need any further information or clarification. Moreover, Plaintiff was represented by a licensed attorney at the hearing, who did not object to the record as it stood and did not bring to the ALJ's attention that any further development from the treating doctor was needed.[3] Tr. 30, 31; *see Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately

---

[3] The attorney did indicate that some medical records were missing from the record, but those records were "more information regarding ongoing condition." Tr. 31. "I would say that for purposes of her [date last insured,] the record is complete[.]" *Id.*

explored."). Therefore, the Court finds no reversible error in the ALJ's duty to recontact Plaintiff's treating doctor.

## B. Plaintiff's challenges to whether she has transferable skills and can make the vocational adjustment to other work

Plaintiff makes myriad challenges to the ALJ's finding that she has sufficient transferrable skills to be able to perform other work. [Doc. 18] at 15–20. The Court need only address one of these challenges because it necessarily affects the others. An ALJ must "make findings specifically targeted at the level of vocational adjustment needed for [the claimant] to enter potential [identified] positions, as required by 1982 SSR LEXIS 34, Social Security Ruling 82-41." *Nielson v. Sullivan*, 992 F.2d 1118, 1121–22 (10th Cir. 1993); *see also Dikeman v. Halter*, 245 F.3d 1182, 1188 (10th Cir. 2001) (holding that the ALJ must make findings on remand about vocational adjustment required for claimant who had since reached advanced age to perform other semi-skilled jobs); *Webster v. Barnhart*, No. 05-5170, 187 F. App'x 857, 860−61 (10th Cir. July 3, 2006) (unpublished) (reversing and remanding for ALJ's failure to make the required findings regarding the level of vocation adjustment necessary for the plaintiff to perform the other jobs); *cf. Jensen v. Barnhart*, 436 F.3d 1163, 1166 (10th Cir. 2005) (discussing ALJ's finding about overall vocational adjustment necessary for claimant to perform other jobs). In this case, because Plaintiff was of "advanced age" at her date last insured, Tr. 20, and because the ALJ limited her to sedentary work, the regulations dictate that she is disabled unless the ALJ identifies other jobs that she can perform for which there is "very little, if any vocational adjustment," 20 C.F.R. pt. 404, subpt. A, app. 2, sec. 201.00(f) ("In order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and

over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry.").

For example, the Tenth Circuit reversed and remanded in *Webster*, explaining:

> The ALJ . . . did not make the required specific findings [on vocational adjustment]. He made only the very general finding that "[b]ased on the testimony of the vocational expert, the undersigned concludes that considering the claimant's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy." That the record contains evidence that may support a specific factual finding cannot substitute for the finding itself. We are not in a position to draw factual conclusions on behalf of the ALJ.

187 F. App'x at 860–61 (some quotation marks and all citations omitted) (second alteration in original).

Here, as in *Webster*, the ALJ did not make the required specific findings regarding the amount of vocational adjustment Plaintiff would have to make in order to perform the other jobs cited by the ALJ. Rather, he found:

> Additionally, the vocational expert testified that very little in the way of vocational adjustment would be required and that an individual with [Plaintiff]'s age, education, vocational profile, and residual functional capacity finding during the period in question would be capable of learning the jobs identified with a few demonstrations. Accordingly, [the ALJ found] that [Plaintiff] would be capable of performing the jobs listed by the vocational expert in his testimony.

Tr. 21. This is not sufficient. The ALJ must make an express finding on the amount of vocational adjustment required for Plaintiff to perform the other jobs. The parties also dispute whether the evidence could substantially support a finding that Plaintiff's adjustment would be

9

"very little, if any." [Doc. 18] at 15–20; [Doc. 20] at 9–13; [Doc. 21] at 1–2. However, the Court need not reach those issues. The ALJ must make a finding first.

### C. Plaintiff's argument regarding development of the record regarding her osteoarthritis

Plaintiff argues that the ALJ failed to develop the record regarding her osteoarthritis. [Doc. 18] at 21. She correctly explains that the ALJ was responsible for developing an adequate record on the issues raised because social security hearings are non-adversarial. *Id.* (citing *Hawkins*, 113 F.3d at 1164). The Commissioner responds that the ALJ was not obligated to act as Plaintiff's attorney. [Doc. 20] at 13. She recounts that neither Plaintiff's attorney, nor Plaintiff herself, submitted additional evidence regarding her osteoarthritis. *Id.* at 13–14. She concludes, therefore, that the ALJ met his duty of developing the record. *Id*.

The Court finds that Plaintiff has failed to meet her burden before this Court to show that the ALJ impermissibly erred regarding the development of the record. In particular, the ALJ did find that Plaintiff's arthritis was severe at step two. Tr. 13. He also assessed resulting limitations. *See* Tr. 16. Apparently, the record was already developed, and the ALJ made findings in Plaintiff's favor. Moreover, Plaintiff was represented by a licensed attorney at the hearing, who did not object to the record as it stood. *See Hawkins*, 113 F.3d at 1167. Finally, the diagnosis of osteoarthritis was made in April of 2010, more than one year after Plaintiff's insured status expired. Considering these circumstances, the Court is not persuaded that the ALJ failed his duty to adequately develop the record.

## V. Conclusion

The ALJ failed to make the required, specific findings on the level of vocational adjustment required for Plaintiff to perform other jobs. Accordingly, the Commissioner's final decision should be reversed and the case remanded.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum [Doc. 18] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**